Polinelli *v.* Union Supply Company, Appellant.

Argued March 16, 1961.   Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

reargument refused May 24, 1961.

*B. Patrick Costello,* with him *Robert W. Wertz,* and *Smith, Best and Horn,* for appellant.

*John D. Lyons, Jr.,* with him *Avra N. Pershing, Jr., Henry E. Shaw,* and *Scales and Shaw,* for appellees.

Opinion by Mr. Justice Eagen, May 2, 1961:

The plaintiffs, Mary E. Polinelli and Arthur A. Polinelli, her husband, sued the defendants, Clyde Hileman, an individual, and Union Supply Company, a corporation (hereinafter referred to as Union), to recover for personal injuries suffered by the wife-plaintiff through alleged negligence of the defendants. The verdict of the jury awarded the wife-plaintiff the sum of $15,500 against the corporate-defendant, Union, and found in favor of the defendant, Hileman. Motions for judgment non obstante veredicto and a new trial were dismissed. From the judgment entered on the verdict, Union appeals.

In considering the merits of the motion for judgment non obstante veredicto, the testimony must be read in the light most advantageous to the jury winner: *Titusville Trust Co. v. Johnson,* 375 Pa. 493, 100 A. 2d 93 (1953); *Borzik v. Miller,* 399 Pa. 293, 159 A. 2d 741 (1960). Viewed in this light, the record discloses that the jury could find the following facts: Union was engaged in building and selling houses on a tract of land which it owned. It entered into a contract with the defendant, Hileman, to furnish the carpentry work necessary in the construction. Others were engaged to do the plumbing, the heating, the electrical work and the other necessary portions of the finished houses. No general contractor was employed. Union's employees supervised the work as a whole.

The plaintiffs signed a sales order to buy one of these houses. Before the execution and acceptance of the order, the wife-plaintiff informed the sales representative of Union that certain changes would be necessary in the plans and specifications of the kitchen in order to make possible the installation of their present gas refrigerator and gas stove. Union's representative assured her that the changes would be made. Union contacted Hileman and directed him to discuss the pro-

posed changes with the purchasers. Accordingly, Hileman sought out Mrs. Polinelli and arranged to meet with her at the property on a certain day and hour for this purpose. When she arrived, Hileman was not yet there. Men were working in the house; she knocked at the door and was invited inside. This was her first visit to the premises. She walked through the living room, where carpenters, employees of Hileman, were laying flooring, into the kitchen. Here three men were busy covering the floor with linoleum. These were employees of Union. As she entered, there was a "carpenter's horse" standing perpendicularly in the doorway between the living room and the kitchen. There was room for her to walk around it. Because she was in the way of the work being done in the kitchen, she remained there only a few minutes and started to retrace her steps back into the living room. An employee of Hileman was, at the moment, sawing hardwood flooring on the "carpenter's horse" in the doorway. As she walked behind him his arm bumped her, threw her off balance causing her left leg to fall into an open and unguarded register opening. She was seriously injured. This open hole had existed for a period of four or five days previously and was located in the living room floor seven inches from the doorway leading to the kitchen. When the wife-plaintiff first entered the kitchen, it (the hole) was hidden from view by a covering of hardwood flooring and tools. She did not see it and was not aware of its existence.

In the construction of the houses, Hileman came into contact, at least four or five times every day, with one Frank Barron, field manager for Union. The latter told Hileman when to begin and where to build the houses. He also directed how the work was to be done, specified the materials to be used and offered general supervision. Hileman considered him "the boss." The plans, specifications and materials were all furnished

by Union. Hileman hired and fired the actual carpenters and paid them.

The corporate-defendant strenuously maintains that in the construction of the houses, Hileman was an independent contractor and that it (Union) is not responsible for his negligence or that of his employees. This is correct. Under the uncontradicted facts, Hileman was an independent contractor in the construction work under his domain. The jury, in answer to a special question submitted, found that Hileman was not guilty of negligence that was the proximate cause of the injury. But, it also specifically found Union guilty of negligence that did cause the injury and Union's negligence is not based on the negligence of Hileman. It is based solely on the negligence of Union itself. There is ample proof in the record to sustain the jury's finding that Union was independently guilty of negligence. Under such circumstances, the fact that Hileman was an independent contractor is irrelevant. Also, recovery could be had against Union irrespective of the existence of negligence on the part of Hileman: *Pryor v. Chambersburg Oil & Gas Co.*, 376 Pa. 521, 103 A. 2d 425 (1954).

The wife-plaintiff was a business visitor of Union to the premises. Its employees, including the field manager, Barron, had constructive notice, if not actual notice, of the existence of the hole in the floor. Further, when Hileman was contacted by Union and directed to confer with the wife-plaintiff concerning the changes in the kitchen layout, he was its agent for that purpose. He, admittedly, knew of the dangerous condition for days before. See, *Johnson v. Rulon*, 363 Pa. 585, 70 A. 2d 325 (1950). Union owed wife-plaintiff as a business visitor, the duty to keep the premises in a reasonably safe condition or at least to warn her of any dangers thereon, which it knew or should have known to exist: *Bloomer v. Snellenburg*, 221 Pa. 25,

69 Atl. 1124 (1908); *Stark v. Lehigh Foundries, Inc.,* 388 Pa. 1, 130 A. 2d 123 (1957). It failed in that duty.

Union's further contention that if any negligence existed on its part, it was not the proximate cause of the accident is also without merit. It is argued that the act of the carpenter, an employee of Hileman, by jostling the wife-plaintiff, was the primary, efficient and proximate cause of the injury. Under the facts, whether or not Union's negligence was the proximate cause of the accident was for the jury. One, who negligently creates a dangerous situation, cannot escape liability for the natural and probable consequences thereof, even though the innocent act of a third party may have contributed to the result: *Jeloszewski v. Sloan,* 375 Pa. 360, 100 A. 2d 480 (1953); *Jowett v. Pa. Power Co.,* 383 Pa. 330, 118 A. 2d 452 (1955); *Landis v. Conestoga T. Co. (No. 1),* 349 Pa. 97, 36 A. 2d 465 (1944); *Murray v. Frick,* 277 Pa. 190, 121 Atl. 47 (1923); *Christman v. Segal,* 143 Pa. Superior Ct. 87, 17 A. 2d 676 (1941); Restatement, Torts, §447.

Finally, Union argues that the wife-plaintiff was guilty of contributory negligence as a matter of law. Certainly, this is a case where reasonable minded individuals would disagree as to whether or not she was guilty of negligence which contributed to her fall. Under such circumstances, the jury must answer this question: *Martino v. Adourian,* 360 Pa. 580, 63 A. 2d 12 (1949); *Stringert v. Lastik Prod. Co., Inc.,* 397 Pa. 503, 155 A. 2d 625 (1959).

In support of the motion for a new trial, the only error assigned is the trial court's failure to charge the jury that in the construction of the house Hileman was an independent contractor, and that Union was not responsible for the negligence of his employees. In view of the facts, the failure to so charge was not prejudicial error.

Judgment affirmed.

DISSENTING OPINION BY MR. JUSTICE BELL:

The independent intervening act of Hileman's carpenter was, in my judgment, clearly and unquestionably not only the proximate cause, but the sole proximate cause of plaintiff's accident. Furthermore, Union Supply Company could not be actually or legally liable unless Hileman was. I would enter judgment in favor of Union Supply Company non obstante veredicto.

Mr. Justice BENJAMIN R. JONES joins in this dissenting opinion.