# Haney *v*. Pittsburgh, Allegheny & Manchester Traction Co., Appellant.

*Negligence—Electric railways—Crossings—Watchman.*

In an action to recover damages for personal injuries against a company operating an electric railway, the case should be submitted to the jury where evidence for the plaintiff tends to show that plaintiff, while driving a loaded two-horse wagon, stopped about ten or twelve feet short of defendant's track at a public crossing, that he saw a car approaching apparently at its usual rate of speed, and a considerable distance off, that he was then signaled by the company's watchman to cross the track, and while in the act of doing so was struck by the car and injured, and several witnesses testified that the car was going at an unusually high rate of speed.

Argued Nov. 14, 1893.  Appeal, No. 217, Oct. T., 1893, by defendant, from judgment of C. P. No. 1, Allegheny Co., June T., 1892, No. 881, on verdict for plaintiff, Daniel P. Haney.  Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ.

Trespass for personal injuries.  Before COLLIER, J.

The facts appear by the opinion of the Supreme Court.

The court charged in part as follows :

" The plaintiff asks damages for injuries received, as he alleges, by the negligence of the defendant company.  [Were it not for the testimony in the case on the part of the plaintiff that a watchman of the defendant company signalled him to come across the track, the plaintiff would have no case whatever ; and this for the simple reason that he and his witnesses admit that he saw the car coming up Federal street, that he stopped in a perfectly safe place for a large two-horse wagon

filled with ashes and cinders, and then attempted to cross. Without that evidence as to the signal he would have no case whatever, because your common sense would teach you, without any law, that when a man drawing a heavy wagon stops and sees a car coming, he goes at his peril if he undertakes to cross; he must wait until the car goes by. So I say, were it not for this evidence the plaintiff would not have any case. But he alleges that while he was there, and while he saw the car coming rapidly, the watchman signalled to him that all was clear, to come across; and presuming on that, that he understood his business, he undertook to drive across, and as soon as he got far enough over his front wheel was struck by the car, and he was thrown off and injured. It all depends upon that.] [1]   They say that he was signalled, that this man here, who says he is the inspector, waved to him to come across, and relying upon that he went across and got hurt.

"Now, there is the first disputed fact. The man himself says he was not a watchman and did not give any signal that day; that he was not an employee as a watchman, that was not his business, he was not there to signal people at all. He also says even if he had given him a signal he could not have seen it in that position. That is the first question to be determined. If this witness was not the officer of the company, and did not give the signal, then the plaintiff cannot recover because he went across on his own responsibility. In the second place, [if it is as they say, and he was the watchman of the company and did give the signal, then you have to determine whether, the man being in a perfectly safe position, and even though he got a signal, acted as a prudent man under such circumstances in attempting to cross, when, in a second or two, the car would have been past. If he was not acting as a reasonably prudent man would do under the circumstances, he could not recover, because he would be guilty of contributory negligence.] [2]   Those are the questions for you to determine."

Defendant's point was as follows:

"That under all the evidence in the case the verdict must be for the defendant." Refused. [3]

Verdict and judgment for plaintiff for $500.

*Errors assigned* were (1–3) above instructions, quoting them.

*A. M. Neeper*, for appellant, cited: Ehrisman v. Ry., 150 Pa. 186; Carson v. Ry., 147 Pa. 225; Moore v. Ry., 108 Pa. 352; R. R. v. Langdon, 92 Pa. 28; R. R. v. Boyer, 97 Pa. 91.

*James Fitzsimmons*, for appellee, not heard, presented no paper-book.

OPINION BY MR. CHIEF JUSTICE STERRETT, Dec. 30, 1893:

In the light of the testimony before the jury, this was clearly a case for their consideration. That introduced on behalf of the plaintiff tended to prove, in substance, that while driving a loaded two-horse wagon, westwardly, on Robinson street, Allegheny city, he came to the Federal street crossing and there halted about ten or twelve feet east of defendant's track, on which he saw one of its cars approaching, from the south, apparently at its usual rate of speed and a considerable distance off. He was then signalled by the company's watchman to cross the track, and while in the act of doing so was struck by the car and seriously injured. When thus signalled the approaching car was quite a distance south of the crossing,—so far therefrom as to apparently afford him ample time to cross with entire safety.

The circumstances leading up to and connected with the collision were fully detailed by the plaintiff and his witnesses. Some of the latter testified to the reckless rate of speed at which defendant's car was running. One of them, describing the occurrence, said that plaintiff " was coming down Robinson street and he got as far as Federal street, within about twenty feet of the track. He stopped there and the flagman on the opposite side of the street beckoned him to come across. . . . At that time, there was a Rebecca street car coming down off the bridge. I suppose it was running about twenty-five or thirty miles an hour. . . . Just about that time he came to the track and got about half way across when the car struck him. It got so close on him he saw he couldn't get out of the way and he swung his team off to the right, and just as he swung his team off the car caught him, caught the front wheel of the wagon and threw him off, down between the wagon and the

car, and dragged him up the street, I suppose, the length of thirty or forty feet."

One of defendant's witnesses,—the person pointed out as the watchman who beckoned plaintiff to cross,—testified that " the car was running at a proper rate of speed, about eight or ten miles an hour, and the wagon was coming in the same direction, driving along the track." He denied that he had beckoned plaintiff to cross; and his version of the occurrence differed materially from that of plaintiff's witnesses. The logic of the verdict, however, is that the jury did not entirely rely on his recollection of what occurred.

It may appear incredible that an electric car should be permitted to run, on one of the most crowded thoroughfares of the city, at such a reckless rate of speed as that indicated by some of the witnesses; but, when we consider the distance to be traversed by the car from the end of the bridge to Robinson street—nearly two squares—it becomes evident that the car in question was running at a dangerously high rate of speed. If the defendant had exclusive right to the street it would present a different question; but no such exclusive right is or can be claimed, and, so long as a user of the street in common with the public exists, it is the duty of street railway companies to exercise such watchful care as will prevent accidents or injury to persons or property. The degree of care required must necessarily vary with the circumstances of each case.

There was a manifest conflict of testimony as to material matters of fact, bearing on the questions of negligence and contributory negligence involved in the issue. This necessarily carried the case to the jury, and to them it was fairly submitted with instructions that were entirely adequate and free from error. It was the special province of the jury to determine from all the testimony before them what the facts were, whether the injury complained of was caused by defendant's negligence, and, if so, whether plaintiff himself was guilty of negligence which contributed thereto.

The only assignments of error are to the instructions recited in the first and second specifications, and the learned judge's refusal to say, as requested, " that under all the evidence . . . the verdict must be for defendant." As to the instructions complained of, they were quite as favorable to the company

defendant as it could reasonably ask; and to have withdrawn the case from the jury by binding instructions to find for the defendant would have been plain error.   There is no merit in either of the specifications.   The insuperable difficulty in defendant's way is, that, upon sufficient testimony and under proper instructions, the controlling facts were found by the jury in favor of the plaintiff.

Judgment affirmed.